1
2
3
4
## UNITED STATES DISTRICT COURT
5
## DISTRICT OF NEVADA
6
7   AUGUSTA GARY,                          )
8                             Plaintiff,   )        Case No. 2:14-cv-00992-GMN-GWF
                                           )
9   vs.                                    )        **FINDINGS AND**
                                           )        **RECOMMENDATION**
10  CAROLYN W. COLVIN,                     )
    Commissioner of Social Security,       )
11                                         )        Motion for Reversal and/or Remand (#16)
                              Defendant.   )        Cross-Motion to Affirm (#18)
12  _____)

13          This case involves a judicial review of administrative action by the Commissioner of Social

14   Security denying Plaintiff Augusta Gary's claim for disability benefits under Title II of the Social

15   Security Act.  Plaintiff's Complaint (#4) was filed June 23, 2014.  Defendant's Answer (#10) was filed

16   August 26, 2014, as was a certified copy of the Administrative Record (the "AR").  (*See* #12)  This

17   matter has been submitted to the undersigned United States Magistrate Judge for Findings and

18   Recommendations on Gary's Motion for Reversal and/or Remand (#16), filed on November 5, 2014,

19   and the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal

20   and/or Remand (#18), filed on November 24, 2014.

21                                        **BACKGROUND**

22          **A.      Procedural History.**

23          On February 9, 2011, Plaintiff filed a Title II application for a period of disability and disability

24   insurance benefits, alleging that her disability began on July 25, 2010.  AR 17.  The Social Security

25   Administration denied the Plaintiff's claim on June 29, 2011.  AR 48.  Plaintiff filed for

26   reconsideration, which was denied on February 3, 2012.  AR 56.  Plaintiff requested a hearing before an

27   Administrative Law Judge (ALJ) and testified before the ALJ on December 12, 2012.  AR 28-45.

28   During the hearing, Plaintiff amended her onset date to May 9, 2011.  AR 31.  Vocational Expert

1   Bernard Preston also testified at the hearing.  AR 41-44.  The ALJ determined that Plaintiff was not

2   disabled.  AR 14-23.  Plaintiff appealed the decision of the ALJ to the Appeals Council on February 13,

3   2013.  AR 1.  The Appeals Council denied Plaintiff's request for review on April 23, 2014.  AR 1-5.

4   Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This matter

5   has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§

6   636(b)(1)(B) and (C).

7   **B.   Factual Background.**

8   Plaintiff Augusta Gary was born on April 9, 1957, and was 55 years old at the time of the ALJ's

9   decision.  AR 110.  She is 5'6" tall and weighed 147 pounds in February 2011.  AR 137.  Plaintiff has a

10  high school education.  AR 32.  Ms. Gary has three adopted children that, at the time of the hearing,

11  were ages two, four, and seven.  AR 33-34.  Plaintiff and her children reside alone.  AR 34.

12  **1.   Plaintiff's Disability/Work History Reports and Hearing Testimony**

13  In her initial February 2011 disability report, Plaintiff listed her disabling conditions as neck and

14  back pain.  Ms. Gary stated she stopped working on July 1, 2008 because her current contract had

15  expired.  AR 137.  According to this report, Plaintiff's last job was in finance from 1995 to 2008.  AR

16  138.  Plaintiff primarily worked in the accounts payable/receivable department.  AR 143.  Plaintiff

17  stated that she would sit for six out of the 8-hour work day.  AR 151.  This job did not require her to do

18  any lifting.  AR 151.  Plaintiff reported that she treated with Dr. Barn on July 26, 2010 following an

19  injury to her back.  AR 140.  She received heat treatments and physical therapy.  AR 140.  No other

20  providers were identified.

21  Plaintiff submitted a second disability report in July 2011.  AR 160-165.  At that time, she stated

22  that there had not been any change (for better or worse) in her illnesses, injuries, or conditions since her

23  initial report.  AR 160.  She reported that since her initial report, she was treated at UMC Rancho

24  Primary Care.  AR 161.  Plaintiff reported that she was treated for "[a]ll conditions."  AR 161.

25  Following that visit, Plaintiff was prescribed Gliburide and Metformin for her diabetes and was told to

26  take Advil PM for her pain.  AR 162.

27  Plaintiff filed a third disability report dated April 4, 2012.  AR 166-173.  Plaintiff stated that her

28  pain was increasingly becoming worse, noting that she now has to take a bath in Epsom salts everyday

and for longer periods of time.  AR 168.  She stated that she could still take care of her personal needs but was usually in pain.  AR 171.  Her day would usually consist of taking her children to school and then return home for the rest of the day where she would look up doctors who could treat her.  AR 171.  She also stated that she was limited in the amount of cooking and cleaning that she could do, and that her sister significantly helped her with those tasks.  AR 171.  Plaintiff once again noted that she had been treated at UMC Rancho Primary Care.  AR 169.  Plaintiff's prescription list increased to include Gabapentin for nerve damage/neuropathy, Glipizide for diabetes, Lidoderm Patch for pain, and Lisinopril for high blood pressure.  AR 170.  Plaintiff was still taking Metformin for her diabetes and Advil PM for pain.  AR 170.

Plaintiff testified at a hearing before ALJ Gatto on December 12, 2012.  AR 30-41.  She stated that she had a high school diploma.  AR 32.  She explained that she could not work due to "the amount of pain I experience on a daily basis."  AR 33.  She had problems with her vision that were "always going to be affected" if she continued to suffer from hypertension and hyperglycemia.  Her diabetes and her back pain were consistent problems.  She took over-the-counter pain medication because she was allergic to "anything with codeine."  She had three adopted children who were then ages two, four, and seven.  AR 33-34.  She had a driver's license, but chose to use public transportation instead of driving due to the problems with her vision.  AR 34.  Plaintiff stated that she had exhausted her savings and was surviving on post-adoption assistance funding.  AR 34-35.  Her sister assisted in caring for the three children by cleaning, ironing, getting them ready for school, and getting items from the supermarket.  AR 35.  Plaintiff's sister usually came over to help two or three times per week.  AR 36.  Plaintiff testified that she used reading glasses.

Plaintiff testified about her neuropathy, which caused weakness, numbness, and pain due to nerve damage.  This affected her most strongly on the right side of her body.  She noted that she could not stand her clothes to be touching her on that side, and that her condition extended from the side of her face down to her toes.  This condition caused her balance problems, which caused her to fall.  She claimed that she fell two to three times per month.  AR 37.  She did not use a walker or anything that would assist her with walking.  She testified that she had some difficulty feeling hot or cold, which resulted in blisters when she got into a bath that was too hot.  Since she had her lens replacement eye

3

1    surgery, her vision had improved in her left eye to the extent that she did not need a contact lens or

2    glasses for that eye.  Afterward, she had a laser surgery "because of the diabetes and the hypertension."

3    AR 38.  She was able to get that surgery because "I had insurance and could afford it."  She had been

4    advised that she would likely need additional surgery in the future.  Her depth perception was not

5    always good, and sometimes she could not raise up her leg enough to get to the next stair as a result.

6    Her blood pressure made her nauseous, and caused her to be unable to keep any food down for three

7    days at a time.  Because she no longer had health insurance, she only went to urgent care when she

8    could afford to do so.  AR 39.  She believed she may suffer from depression.  Her work experience was

9    limited to being in front of a computer, which she says she could no longer do because her fingers

10   locked up and her vision made her dizzy.  She could not focus on a computer screen for a long period of

11   time.  AR 40.  Her doctors consistently advised her to get her blood pressure and diabetes under control

12   before addressing her back problems, and she did not believe her back had been fully examined.  Her

13   blood pressure had been so high that she was hospitalized.  She testified that her right side was numb,

14   and that her left side hurt from the nape of her neck down to her arm and below the knee.  AR 40.

15            **2.    Vocational Expert's Testimony**

16            Vocational Expert Bernard Prestin testified at the December 12, 2012 hearing.  AR 41-44.  He

17   stated that Plaintiff had prior experience working as an accounts payable clerk.  AR 42.  According to

18   the Directory of Occupational Titles, that work is sedentary and skilled.  When asked if a hypothetical

19   woman between ages 53 and 55 with a high school education, the work history of Plaintiff, and a

20   history of myofascial pain due to degenerative changes in her spine and her status post-laser treatment

21   for proliferative retinopathy, diabetes, and hypertension, who was limited to medium exertion, could

22   perform Plaintiff's past work, Mr. Bernard testified that the hypothetical woman could do so.  Mr.

23   Bernard also testified that a hypothetical woman limited to light or sedentary work could still perform

24   the job of accounts payable clerk.  AR 43.  However, if the hypothetical woman had to be absent more

25   than two days per month, she could not perform that work.  Furthermore, if the hypothetical woman

26   was limited to only occasional (less than one third of the day) use of bilateral dexterity in her hands, she

27   could not perform the job of accounts payable clerk.  AR 43-44.

28   . . .

### 3.     Medical Records and Reports

At the request of the Bureau of Disability Adjudication, Plaintiff presented for an orthopedic examination and evaluation with Dr. Jerrold M. Sherman on May 9, 2011.  Ms. Gary complained of posterior neck pain that consisted of constant aching pain with pain across the tops of both shoulders and episodes of numbness and weakness involving all ten fingers and both hands.  AR 186.  Plaintiff did not have radicular pain from the neck into the arms or hands but claimed episodes of painful limited neck motion.  AR 186.  Plaintiff did not use a neck brace.  Plaintiff also complained of lower back pain. She explained how she experienced constant aching pain with episodes of aching pain involving the right posterior thigh and buttock.  AR 186-187.  Plaintiff further complained of painful limited motion of her back, but did not wear a back brace and last used a cane in February 2011.  AR 187.

Dr. Sherman noted that Plaintiff had a normal gait and did not require the assistance of a cane or brace to ambulate.  AR 187.  He found that Plaintiff has a 100%-normal range of motion of the cervical spine.  AR 187.  Plaintiff only complained of pain at the extremes of her range of motion.  AR 187. There was no muscle spasm or tenderness about the cervical spine.  Dr. Sherman noted that Plaintiff had a 100%-normal, pain free range of motion of both shoulders, elbows, wrists and small joints of the hands and fingers.  AR 187.  She had normal grip strength bilaterally and the nerve and circulation was intact in both hands.  Plaintiff could easily make a tight fist with both hands demonstrating normal finger motion.  AR 187.  Dr. Sherman noted that her spine had a normal contour with a 100%-normal range of motion.  AR 188.  Plaintiff complained of pain only when she reached the extremes of the range of motion.  Plaintiff did not have muscle spasms or tenderness in her lumbar spine.  Plaintiff's reflexes appeared to be within normal limits and she had a 100%-normal, pain free range of motion in both hips, knees and ankles.  AR 188.  X-rays of Plaintiff's cervical spine revealed moderate disc space narrowing at the C5-C6 interspace but, otherwise, the intervertebral disc spaces were maintained.  AR 188.  X-rays of the lumbar spine were normal and revealed that the intervertebral disc spaces were well-maintained.  AR 188.

Dr. Sherman opined that Plaintiff was able to sit, stand and walk for six hours during the course of an 8-hour day and did not require a cane, brace or assistive device to ambulate.  AR 188.  She had no restrictions bending forward at the waist, squatting, kneeling, reaching, pushing, pulling, grasping or

1   fine manipulation of activities with the hands.  AR 188.  Dr. Sherman noted that standard breaks and

2   lunch periods would provide Plaintiff with sufficient relief to allow work for 8 hours.  AR 190.

3        Plaintiff presented to University Medical Center on August 5, 2011 with a chief complaint of

4   back pain that averaged an eight on a ten point scale.  AR 204.  She stated that she had not fallen

5   recently, was not afraid of falling, and did not have any physical limitations.  She passed the strength

6   and balance assessment.  AR 204.  Following a physical examination, Plaintiff was found to be in no

7   acute distress.  AR 206.  She was diagnosed with Type II diabetes, c-spine/l-spine herniated nucleus

8   pulposus (HNP), neck and lumbrosacral pain, hypertension, diabetic retinopathy in the right eye and

9   diabetic neuropathy.  AR 204-205.

10   On October 5, 2011, Plaintiff presented to Sunrise Hospital and Medical Center.  AR 209.

11   Plaintiff was treated by Dr. Timothy Tweito.  AR 210-212.  Plaintiff was diagnosed with a vitreous

12   hemorrhage and proliferative diabetic retinopathy in the right eye.  AR 215.  She underwent a pars

13   plana vitrectomy and endolaser of the right eye.  AR 215.  Dr. Tweito noted that Plaintiff tolerated the

14   procedure well.  AR 216.  On October 6, 2011, the day after the surgery, Plaintiff noted that she was in

15   no pain.  AR 224.  A review of Plaintiff's symptoms resulted in normal and negative findings.  AR 225-

16   226.  Plaintiff returned for a follow-up visit on October 24, 2011 and, again, had all normal and

17   negative findings.  AR 221-222.  Dr. Tweito noted, however, that Plaintiff had a mild post-operative

18   hemorrhage that was limiting her vision, but he expected it to clear.  AR 223.

19        Plaintiff presented at Guadalupe Medical Center on November 28, 2011 for a physical exam.

20   AR 230.  She was diagnosed with diabetes, hypertension, and was asymptomatic.  AR 230.  Following

21   the examination, Plaintiff was directed to return in one week to consider starting lisinopril for her

22   hypertension.  AR 230.  Plaintiff returned on December 2, 2011 and stated she was doing well and

23   denied any bleeding problems or bruising.  AR 229.  Plaintiff was given guidance regarding her

24   diabetes and hypertension.  AR 229.

25        Plaintiff presented to Dr. Quinton on January 26, 2012 for a disability eye examination post

26   laser surgery.  AR 240-241.  Dr. Quinton found that Plaintiff had bilateral proliferative retinopathy.  AR

27   241.  Plaintiff's best corrected acuities were OD: 20/30, OS 20/25, OU 20/25+.

28   . . .

1    On November 20, 2012, Plaintiff presented at Mountain View Hospital. Plaintiff's chief

2 complaint was that she had been vomiting. AR 256. Her symptoms had been constant and were

3 described as moderate. AR 256. Plaintiff also complained of a headache and upper back pain. AR

4 256. Plaintiff was monitored, given fluids, and was discharged in an improved condition. AR 259. It

5 was noted that Plaintiff's symptoms may have been caused by her hypertension and diabetes. AR 259.

6    State agency medical consultants Dr. Karyn Doddy and Dr. Julius Villaflor completed physical

7 residual functional capacity assessments of Plaintiff. AR 193-200; 244-251. Dr. Doddy found that

8 Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an 8-hour work

9 day. AR 194. Plaintiff could also sit (with normal breaks) for a total of six hours in an 8-hour work

10 day. AR 194. There were no visual, communicative, or manipulative limitations established. AR 196-

11 197. Dr. Doddy stated that Plaintiff could never climb a ladder, rope, or a scaffold; she could

12 occasionally stoop; and was to avoid concentrated exposure to extreme cold and vibrations. AR 195;

13 AR 197. Dr. Villaflor's assessment was primarily consistent with Dr. Doddy's and contained only a

14 few differences. Specifically, Dr. Villaflor found that Plaintiff could occasionally climb a ladder, rope,

15 or scaffold, she could frequently stoop, but could only occasionally crawl. AR 246. Dr. Villaflor also

16 noted that Plaintiff was to avoid exposure to extreme cold and hazards, but did not limit her exposure to

17 vibrations. AR 248. Both Dr. Doddy and Dr. Villaflor found that Plaintiff could perform work at a

18 medium exertion level. AR 198; 249.

19    **C.    ALJ's Decision.**

20    In a decision dated February 19, 2013, the ALJ found that Plaintiff was not disabled within the

21 meaning of the Social Security Act from July 25, 2010, or the revised onset date of May 9, 2011,

22 through the date of the decision, because Plaintiff possessed sufficient residual functional capacity

23 ("RFC") to perform her past relevant work. In reaching this conclusion, the ALJ followed the five-step

24 process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found that Plaintiff had not engaged in

25 substantial gainful activity since the alleged amended onset date of May 9, 2011. AR 19. Second, he

26 found Plaintiff had severe impairments including "diabetes mellitus (DM), degenerative disc disease of

27 the cervical and lumbar spine, myofascial pains, status post laser treatment for proliferative retinopathy,

28 and hypertension." Third, the ALJ found that Plaintiff's impairments did not, individually or in

7

1  combination, meet the requirements of and were not medically equivalent to any condition listed in

2  Appendix 1, Subpart P, of 20 C.F.R. § 404.1520(c) and § 416.920(c).  AR 20.  Prior to step four of the

3  analysis, the ALJ found:

4  > [Plaintiff] has the residual functional capacity to perform medium work
5  > as defined in 20 CFR 404.1567(c) except she could never climb ladders,
   > ropes, or scaffolds, occasionally crawl, and frequently climb ramps and
   > stairs, balance, stoop, kneel and crouch.  She needs to avoid hazards (i.e.,
6  > heights and dangerous moving machinery), and she could occasionally be
   > around temperatures extremes.

7  AR 20.

8      The ALJ found that the "record as a whole does not support a finding" that the claimant is

9  disabled.  He then summarized her treatment history, which he described as generally not "the type of

10 medical treatment one would expect for a disabled individual."  Plaintiff's hypertension, specifically,

11 had not received any actual treatment.  Her diabetes mellitus, neck pain, and back pain resulted in

12 "relatively infrequent trips to the doctor" and only received "minimal conservative treatment" that "did

13 not require emergency room or hospital treatment."  AR 21.  The ALJ noted that Plaintiff treated her

14 "allegedly disabling pain" with over-the-counter pain medications, such as Aleve or Advil.  When she

15 visited University Medical Center in August 2011, Plaintiff denied any physical limitations, and stated

16 that "she was in no acute distress."

17     The ALJ noted that Plaintiff underwent surgery for vitreous hemorrhage and proliferative

18 diabetic retinopathy of the right eye in October, 2011.  Her follow up treatment indicated that Plaintiff's

19 post-surgical symptoms were expected to disappear, and that she has not received any treatment after

20 October, 2011.

21     The ALJ also summarized the findings of consultative examiner Dr. Jerrold Sherman.  He noted

22 that Dr. Sherman found that Plaintiff could lift and/or carry 40 pounds occasionally and 20 pounds

23 frequently.  She could stand or walk for six hours in an eight hour workday.  She could frequently climb

24 ramps, stairs, ladders, and scaffolds and ropes.  She could frequently balance, stoop, bend, kneel,

25 crouch, squat, and crawl.  The ALJ gave this opinion "some weight," as he found that Dr. Sherman's

26 opinion was "less restricting than the one found in this decision."  The ALJ also cited two state agency

27 medical consultants, Dr. Karyn Doddy and Dr. Julius Villaflor, who found that Plaintiff could perform

28

1   medium level work.  AR 22.

2       The ALJ discussed the findings of Spencer Quinton, O.D., who found that Plaintiff's "best

3   corrected acuity was 20/30 OD."  He also described Plaintiff's ability to care for three children between

4   ages two and seven.  Her childcare abilities provided support for the ALJ's ultimate conclusion that she

5   was not disabled.  The ALJ found that Plaintiff's symptoms could reasonably be expected based on her

6   conditions, but that she was exaggerating "the intensity, persistence, and limiting effects of these

7   symptoms."  He therefore discounted Plaintiff's credibility in making his ultimate determination that

8   Plaintiff could perform her past relevant work as an accounts payable clerk.  AR 22.

9                                          **DISCUSSION**

10      **I.      Standard of Review.**

11      A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's

12  findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal

13  standards.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841,

14  846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla

15  but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

16  adequate to support a conclusion."  *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting

17  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th

18  Cir. 2001).  The Court must look to the record as a whole and consider both adverse and supporting

19  evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the

20  Commissioner of Social Security are supported by substantial evidence, the District Court must accept

21  them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one

22  rational interpretation, the Court is required to uphold the decision.  *Moore v. Apfel*, 216 F.3d 864, 871

23  (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  *See also Vasquez v.

24  Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the

25  ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v.

26  Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

27      It is incumbent on the ALJ to make specific findings so that the court need not speculate as to

28  the findings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500

F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II. Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

> (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a).  At the first step, the Commissioner determines

1   whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the

2   claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Commissioner determines whether

3   the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is

4   not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of

5   Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the

6   claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is

7   not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. §

8   416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* §

9   404.1520(e). If the claimant cannot perform past relevant work, the Commissioner has the burden to

10  prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work.

11  *Id.* § 404.1520(f). If the Commissioner cannot meet his or her burden, the claimant is entitled to

12  disability benefits. *Id.* § 404.1520(a).

13        **III.    Analysis of the Plaintiff's Alleged Disability**

14        **A.    The ALJ's Credibility Determination.**

15        The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts

16  in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

17  Cir. 1982); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). "The ALJ is responsible

18  for determining credibility and resolving conflicts in medical testimony." *Magallenes,* 881 F.2d at 750.

19  However, the ALJ's credibility findings must be supported by specific, cogent reasons. *See Rahad v.*

20  *Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir.

21  1988). General findings are insufficient; rather, the ALJ must identify what testimony is not credible

22  and what evidence undermines the claimant's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

23  1995); *see also Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993). Unless there is affirmative

24  evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the

25  claimant's testimony must be clear and convincing. *See Lester,* 81 F.3d at 834. In weighing a

26  claimant's credibility, an ALJ may consider her reputation for truthfulness, inconsistencies between her

27  testimony and her conduct, her daily activities, her work record, and testimony from physicians and

28  third parties concerning the nature, severity, and effect of the symptoms of which she complains. *See*

11

1    *Smolen*, 80 F.3d at 1284 (citations omitted).

2        In assessing the credibility of a claimant's testimony, the ALJ engages in a two-step analysis.

3    First, the ALJ must determine whether there is objective medical evidence of an underlying impairment

4    which could reasonably be expected to produce the alleged symptoms.  If such evidence is presented

5    and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons

6    for rejecting the claimant's testimony about the severity of her symptoms.  *Molina v. Astrue*, 674 F.3d

7    1104, 1112-3 (9th Cir. 2011), citing *Vasquez v. Astrue,* 572 F. 3d 586, 591 (9th Cir. 2009) and

8    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  In evaluating credibility, the ALJ may use

9    ordinary techniques of credibility evaluation:

10           For instance, the ALJ may consider inconsistencies either in the
             claimant's testimony or between the testimony and the claimant's
11           conduct, *id.*; "'unexplained or inadequately explained failure to seek
             treatment or to follow a prescribed course of treatment,'" *Tommasetti,*
12           533 F.3d at 1039 (quoting *Smolen,* 80 F.3d at 1284); and "whether the
             claimant engages in daily activities inconsistent with the alleged
13           symptoms," *Lingenfelter,* 504 F.3d at 1040.  While a claimant need not
             "'vegetate in a dark room'" in order to be eligible for benefits, *Cooper v.*
14           *Bowen,* 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano,* 637
             F.2d 968, 971 (3d Cir.1981)), the ALJ may discredit a claimant's
15           testimony when the claimant reports participation in everyday activities
             indicating capacities that are transferable to a work setting, *see Morgan v.*
16           *Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999); *Fair,* 885
             F.2d at 603.  Even where those activities suggest some difficulty
17           functioning, they may be grounds for discrediting the claimant's
             testimony to the extent that they contradict claims of a totally debilitating
18           impairment.  *See Turner,* 613 F.3d at 1225; *Valentine,* 574 F.3d at 693.

19       *Molina*, 674 F.3d at 1112-13.

20       The Ninth Circuit has also stated that "ALJs must be especially cautious in concluding that daily

21   activities are inconsistent with testimony about pain, because impairments that would unquestionably

22   preclude work and all the pressures of a workplace environment will often be consistent with doing

23   more that merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

24       In this case, the objective medical evidence established that Plaintiff suffers from diabetes

25   mellitus (DM), degenerative disc disease of the cervical and lumbar spine, myofascial pains, status post

26   laser treatment for proliferative retinopathy, and hypertension.  The ALJ found that Plaintiff's medically

27   determinable impairments could reasonably be expected to cause her alleged symptoms.  AR 22.  The

28   medical records contain no finding that Plaintiff was malingering.  However, the ALJ found that

1    Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were

2    not entirely credible.  AR 22.  The ALJ noted that "the record as a whole does not support a finding that

3    [Plaintiff's] impairments are so severe as to be disabling."  AR 20.  He stated that "[Plaintiff] has not

4    generally received the type of medical treatment one would expect for a disabled individual."  AR 20.

5           To support this conclusion, the ALJ listed the reasons why the objective medical evidence for

6    each impairment raised doubt as to the credibility of Plaintiff's statements regarding the severity of her

7    symptoms.  He first discussed Plaintiff's hypertension.  Specifically, the ALJ stated that Plaintiff had

8    never received any actual treatment for her hypertension, and there was no evidence of any end organ

9    damage due to her hypertension.  AR 20.  Plaintiff testified that her hypertension was so severe that she

10   was hospitalized because of it.  AR 40.  She also testified that her hypertension would cause her to

11   become nauseous, sometimes for three days at a time.  AR 38.  The medical record both tends to

12   support and rebut Plaintiff's contentions.  The ALJ noted that during a visit to Guadalupe Medical

13   Center, in December 2012, Plaintiff reported that she was doing well, and that her hypertension was

14   controlled with medication.  AR 229.  However, about a year later Plaintiff was hospitalized at

15   Mountain View Hospital due to constant vomiting and high blood pressure.  AR 256-268.   The medical

16   records from Mountain View Hospital noted that Plaintiff's high blood pressure is controllable with

17   proper medication, diet, and exercise.  AR 265-266.

18          The ALJ next discussed the objective medical evidence regarding Plaintiff's DM and neck and

19   back pain.  The ALJ discounted Plaintiff's credibility because her DM and neck and back pain had only

20   been infrequently addressed and when she did go to the doctor, "she received only minimal

21   conservative treatment and did not require emergency room or hospital treatment or extensive

22   evaluation or testing" during the alleged period of disability.  AR 21.  The ALJ specifically pointed to

23   Plaintiff's medical records from UMC where it was noted that Plaintiff was in no acute distress, and she

24   denied any physical limitations.  AR 204-206.  The ALJ further noted that the record lacked any

25   evidence that Plaintiff received treatment for her DM and neck and back pain after December 2011.  At

26   the hearing, Plaintiff testified that she only went to the doctor when she could afford to and when she

27   "[has] to go."  AR 39.  The ALJ also found that Plaintiff's medication use did not support her claim that

28

13

1   her impairments were disabling.[1]   Specifically, Plaintiff informed the ALJ that she can only take over-

2   the-counter medication, such as Aleve or Advil, because she is allergic to anything that contains

3   codeine.   AR 33.

4         The ALJ cited to the report of the orthopedic consultative examiner, Dr. Jerrold Sherman.  Dr.

5   Sherman examined the Plaintiff in May 2011.  Dr. Sherman noted that Plaintiff had a normal gait and

6   did not require a cane, brace, or assistive device to ambulate.  AR 187.  Dr. Sherman found that

7   Plaintiff had 100% normal range of motion of the neck and back, and only complained of pain at the

8   extreme ranges of motion.  AR 187-188.  Dr. Sherman noted that there was no muscle spasm or

9   tenderness of the cervical or lumbar spine and her x-ray revealed moderate disc space narrowing at the

10   C5-C6 interspace, but otherwise her intervertebral disc spaces were maintained.  AR 188.  Dr. Sherman

11   found that Plaintiff could stand and/or walk for six hours in an 8-hour work day and sit for six hours in

12   an 8-hour work day.  AR 190.

13         At the hearing, Plaintiff testified that she suffers from neuropathy due to her diabetes diagnosis.

14   AR 36.  She further stated that due to the neuropathy, she is prone to falling and in fact falls "quite

15   often," which is approximately two to three times a month.  AR 36-37.  Plaintiff testified, however,

16   that she does not use a cane and has not been prescribed one.  AR 37.  The medical records do not

17   support Plaintiff's claims that her DM and neck and back pain are totally debilitating.  When Plaintiff

18   visited UMC in 2011 she reported that she had not had a recent fall and was not afraid of falling.  AR

19   204.  Plaintiff also passed the strength and balance assessment while at UMC.  AR 204.  Over a year

20   later, while hospitalized at Mountain View Hospital, it was again noted that Plaintiff did not present a

21   fall risk.  AR 262.

22         Next, the ALJ discussed the objective medical evidence as it related to Plaintiff's eye

23   impairments.  He noted that Plaintiff underwent surgery to repair her vitreous hemorrhage and

24   proliferative diabetic retinopathy of the right eye.  AR 21; See AR 215-216.  Plaintiff received post-

25   operative care at Nevada Retina Center, where she developed a mild post operation hemorrhage that

26

27   _____

28        [1]  The ALJ did not assert that Plaintiff was pain-free, however.  Rather, the ALJ found that "the
     evidence does not support a conclusion that the [Plaintiff's] pain is so severe that it is disabling."

1    limited her visit, but was expected to clear.  AR 223.  The ALJ stated that "[t]here [was] no further

2    record of any treatment for her eyes after October 2011." [2]  AR 21.  Plaintiff testified that since her

3    surgery, her vision improved and now was only required to wear reading glasses.  AR 36-37.  Plaintiff

4    also testified that her vision complications caused her to become dizzy while looking at a computer

5    screen.  AR 39.  She reported that she could not focus on a computer and she never used her computer

6    at home because of these issues.  AR 40.  However, in her April 2012 disability report, Plaintiff stated

7    that she occasionally looked up doctors and other medical sources that she could go to online.  AR 171.

8         Finally, the ALJ noted that the reason why Plaintiff stopped working was not due to her alleged

9    disabling impairments.  Rather, it was due to the termination of her contract.  AR 137.  He further

10   found that Plaintiff's testimony supported the conclusion that she is capable of performing her past

11   relevant work as an accounts payable clerk.  Specifically, the ALJ stated that Plaintiff has adopted three

12   children, then ages two, four, and seven.  AR 22.  The last adoption was finalized in July 2012, only

13   five (5) months before the hearing.  Plaintiff is also able to care for these children with only minor help

14   from her sister who visits two to three times per week.  AR 22;  *See* AR 35.  Clearly, the physical ability

15   to care for such young children is contrary to the types of physical limitations claimed by Plaintiff.

16                                        **<u>CONCLUSION</u>**

17        The inconsistences between the medical records and Plaintiff's testimony provided the ALJ with

18   convincing reasons to reject Plaintiff's credibility.  The ALJ provided specific, clear, and convincing

19   reasons for rejecting the Plaintiff's testimony about the severity of her symptoms.  Plaintiff's medical

20   records do not contradict the ALJ's findings, but rather support his decision that Plaintiff's impairments

21   are not as severe as she described.  Further, there were very few medical records in this case, and the

22   records before the ALJ show that when Plaintiff did go to the doctor, she was only provided with

23   conservative treatment for her impairments.  Therefore, the Court finds that the ALJ appropriately

24   discredited Plaintiff's testimony regarding the severity of her symptoms.

25   . . .

26   _____

27        [2] Plaintiff was seen in January 2012 by consultative examiner Spencer Quinton, O.D.  Dr. Quinton
     diagnosed Plaintiff with diabetic proliferative retinopathy.  Dr. Quinton noted that Plaintiff's best corrected
28   acuity was 20/30 OD, 20/25 OS, and 20/25 OU.  AR 238-243.

1       Plaintiff's past relevant work was as an accounts payable clerk.  This position is considered

2   skilled and the physical demands are at a sedentary level.  The ALJ's determination that Plaintiff's

3   medically determinable impairments did not disable her from working as an accounts payable clerk is

4   supported by the record as a whole.

5                     **RECOMMENDATION**

6       **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#16) be

7   **denied**, and that the Defendant's Cross Motion for Summary Judgment (#18) be **granted**.

8                        **NOTICE**

9       Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing

10   and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the

11   failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure

12   to file objections within the specified time or failure to properly address and brief the objectionable

13   issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

14   the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*

15   *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

16       DATED this 15th day of January, 2016.

17

18                                       _____

19                                         GEORGE FOLEY, JR.

                                    United States Magistrate Judge

20

21

22

23

24

25

26

27

28